UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-337-GWU

DON NEACE, JR.,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

**INTRODUCTION**

Don Neace brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income.  The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.   The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

08-337  Don Neace, Jr.

           impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

08-337  Don Neace, Jr.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

08-337  Don Neace, Jr.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

4

08-337  Don Neace, Jr.

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

08-337  Don Neace, Jr.

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Neace, a 40-year-old former heating and air conditioning foreman with a high school education, suffered from impairments related to obesity, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and asthma. (Tr. 12, 17-18). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 15-17).  Since the available work was found to

6

08-337  Don Neace, Jr.

constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 18-19).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Daryl Martin included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to more than occasionally push, pull or use foot controls with the lower extremities; (2) an inability to more than occasionally balance, bend, stoop, kneel, crouch and climb stairs or ramps; (3) an inability to ever crawl and climb ladders or ropes; (4) an inability to more than frequently reach overhead; and (5) the need to avoid concentrated exposure to full body vibration, fumes, odors, dust or gases and exposure to hazards such as unprotected heights and dangerous machinery.  (Tr. 52-53).  In response, the witness identified a significant number of jobs which could still be performed including such positions as cashiering (16,500 statewide positions) and inspector/checker (7,700 statewide positions).  (Tr. 53-54).  Therefore, assuming that the vocational factors considered by Martin fairly characterized Neace's

08-337  Don Neace, Jr.

condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Neace's condition as required by Varley.  Dr. Mukut Sharma examined the plaintiff and reported a diagnostic impression of degenerative disc disease at L3-L4 and L5-S1.  (Tr. 197).  The only restriction on the claimant's activities reported by Dr. Sharma was a need to quit smoking.  (Id.).  Dr. Carlos Hernandez, a non-examining medical reviewer, opined that Neace would be limited to light level work restricted from a full range by such non-exertional limitations as (1) an inability to more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; and (2) a need to avoid concentrated exposure to vibration, fumes, odors, dusts, and poor ventilation.  (Tr. 254-263).  More severe physical restrictions than those found by the ALJ were not reported by such treating and examining sources of record as the staff at Appalachian Regional Healthcare (Tr. 179-193), the staff at the Mountain Medical Imaging Center (Tr. 194-195), the staff at Chavies After Hours Clinic (Tr. 196, 219-233), the staff at the Vicco After Hours Clinic (Tr. 198-206), and Dr. Mitchell Wicker (Tr. 215-218, 234-239).  These reports provide substantial evidence to support the administrative decision.

Dr. James Chaney, a treating source, identified a number of very severe physical restrictions on a Physical Capacities Evaluation Form, including an inability

8

08-337  Don Neace, Jr.

to sit for more than two hours a day, stand for more than two hours a day, walk for more than one hour a day, lift more than 10 pounds occasionally, or perform bending, squatting, crawling, climbing, or reaching above shoulder level.  (Tr. 265).  The ALJ rejected Dr. Chaney's opinion because he did not believe that it was well-supported by objective evidence.  (Tr. 17).  This action appears appropriate.  The ALJ noted that x-rays of the lumbar spine revealed only mild multi-level degenerative changes.  (Tr. 17, 341).  An MRI scan of the lumbar spine in 2007 showed a "minimal" degree of posterior spondylolisthesis of L5 related to S1 with no sign of high grade lumbar spinal stenosis, a "small" central L5-S1 herniated nucleus pulposus with bilateral neural foraminal encroachment, hypertrophic facet joint change and "mild" bulging at L3-L4.  (Tr. 17, 327).  An MRI scan of the cervical spine revealed mild bulging at C4-C5 and C5-C6, with no sign of a herniated nucleus pulposus, and neural foraminal encroachment related to hypertrophic facet joint change at C4-C5 and C5-C6.  (Tr. 17, 287).   The ALJ also noted that straight leg raising had been negative bilaterally upon physical examination.  (Tr. 17, 338).  Dr. Chaney did not find any sensory or motor deficits upon physical examination.  (Tr. 272, 284).   The objective rest results as a whole show relatively mild abnormalities.  Therefore, the ALJ acted properly in discounting this opinion.

Neace asserts that the ALJ failed to consider the effects of his various conditions in combination.  However, the undersigned has already found that the

08-337  Don Neace, Jr.

hypothetical question fairly depicted the plaintiff's condition.  Therefore, the ALJ implicitly considered all of his impairments in proper combination.

Neace argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Neace was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  As previously noted, his MRI and x-rays, while indicating some problems, did not reveal a totally disabling condition.  Despite complaints of shortness of breath (Tr. 40), the claimant continued to smoke cigarettes (Tr. 44). Dr. Wicker reported that a physical examination revealed normal balance and that his reflexes were intact.  (Tr. 215).  Even Dr. Chaney noted on several occasions that the plaintiff had a full range of motion in his extremities.  (Tr. 286, 306, 318, 320, 332, 334).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear

10

08-337  Don Neace, Jr.

to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Neace's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 19th day of August, 2009.

Signed By:

_G. Wix Unthank_

United States Senior Judge

11